No. 25-2432

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

Planned Parenthood Mar Monte, Inc.,
Plaintiffs-Appellants,

v.

Aaron Ford, in his capacity as Nevada Attorney General, et al.,
Defendants-Appellees

_____

## APPELLANT'S MOTION FOR STAY PENDING APPEAL

BRADLEY S. SCHRAGER, ESQ.
DANIEL BRAVO, ESQ.
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Email: bradley@bravoschrager.com
Email: daniel@bravoschrager.com

VALENTINA De FEX, ESQ.
PLANNED PARENTHOOD FEDERATION OF AMERICA
123 William Street, Floor 9
New York, NY 10038
Email: valentina.defex@ppfa.org

*Attorneys for Plaintiff-Appellants,*
*Planned Parenthood Mar Monte, Inc.*

## INTRODUCTION

For four decades, unmarried and unemancipated young people[1] in Nevada have been permitted to decide whether to continue a pregnancy or to seek an abortion without forced parental involvement or judicial oversight. If allowed to take effect, the District Court's Rule 60(b)(5) decision—allowing NRS 442.255 and NRS 442.2555's (collectively "parental notification" and "judicial bypass process") requirements to be enforced for the first time since enacted in 1985—will upend the status quo while this Court determines whether vacating the 1991 judgment was proper. Absent a stay, young people will be barred from accessing abortion unless they can satisfy the "parental notification" requirement or obtain judicial authorization via a statutory "judicial bypass process." The District Court temporarily stayed this Order to allow consideration of this Motion. Add.[2] 28-39.

Plaintiff-Appellant, Planned Parenthood Mar Monte ("PPMM"), its patients, and physicians will suffer irreparable harms absent a stay of the Rule 60(b) Order during the appeal process: young people will face delay or denial of access to an abortion, which is legal in Nevada, and abortion providers will be vulnerable to arbitrary enforcement of a criminal statute that no district attorney or court has ever interpreted or enforced previously. Nothing in the record calls into question that: (1)

---

[1] The use of "young people" or "young person" refers to people under the age of eighteen.

[2] Citations to "Add. _" refer to Plaintiff's Addendum to this Motion to Stay.

1

the judicial bypass process exists abstractly and is not meaningfully accessible, even under the terms of the statute and (2) at least some prosecutors intend to enforce these provisions, which contain terms that no party has identified binding standards proscribing their enforcement. Critically, the record of harms that will be experienced remains unrebutted.

The core of the Rule 60(b) decision—that *California by and through Becerra v. EPA*, 978 F.3d 708 (9th Cir. 2020) *per se* requires granting Rule 60(b)(5) relief of an *injunction* when *case law* overruled cited precedent irrespective of whether the vacatur would result in constitutional violations—cannot be reconciled with Fed. R. Civ. P. 60(b), binding jurisprudence and judicial admonitions proscribing using Rule 60(b) to relitigate the underlying merits of a long-settled case. All factors favor granting a stay: PPMM will be able to demonstrate at least serious questions as to the merits, its providers and patients will suffer irreparable harm, and the balance of the equities between the parties and the public tip sharply in its favor. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## BACKGROUND

Enacted in 1985, NRS 442. 255 and NRS 442.2555 bar a physician from performing an abortion for any "unmarried or unemancipated" patient under the age of eighteen without notifying a "custodial parent or guardian", or receiving a court order through a specified process waiving this requirement. Violations of these

2

statutes constitute crimes under Nevada law. NRS 442.257. Before these provisions went into effect, the District Court granted a temporary restraining order, *see* Dckt.[3] 6, and a subsequent preliminary injunction barring the enforcement of these provisions, which was affirmed by this Court. *See Glick v. McKay*, 616 F. Supp. 322 (D. Nev. 1985) *aff'd* 937 F.2d 434 (9th Cir. 1991). On October 10, 1991, upon Plaintiffs' unopposed motion for summary judgment, Dckt. 68, Dckt. 71, the court entered declaratory and permanent injunctive relief barring enforcement of the enjoined statutes.

PPMM is a non-profit health care provider and the successor in interest of Plaintiff, Planned Parenthood Washoe County.[4] *See* Dckt. 103. Through Nevada-licensed physicians, PPMM provides a range of reproductive and primary health services in Reno and North Las Vegas, NV, including abortion. Add. 43.

## I.  Rule 60(b) Motion and Appeal

On December 1, 2023, two of the original Defendants Carson City District Attorney and Lyon County District Attorney ("District Attorneys") filed a Rule 60(b)(5) Motion seeking to vacate this Court's 1991 final judgment, on the basis that (1) *Lambert v. Wicklund*, 520 U.S. 292 (1997) abrogated *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991) for failure to "follow [*Ohio v. Akron Center for Reproductive*

---

[3] References to "Dckt. _" refer to documents filed in the underlying proceeding's electronic filing system.

[4] Dr. Eugene Glick, the other Plaintiff in this case, is deceased. *See* Dkt. 103.

*Health*, 497 U.S. 502 (1990)] under which Nevada's law was constitutional" and (2) *Dobbs v. Jackson Women's Heath Org*, 142 S. Ct. 2228 (2022) removed "any federal-right foundation" of the judgment. Add. 220. Accordingly, the District Attorneys argued that either ground served as a basis for granting Rule 60(b)(5) relief under the "inequity" provision. PPMM opposed this motion on the basis that the movants' motion was untimely, that several of the arguments, particularly *Lambert*, should be evaluated under a different provision of Rule 60(b), and that the movants had failed to meet their burden in demonstrating that the proposed modification, vacatur, was "suitably tailored" to any "significant change in law," in light of other independent federal constitutional violations that would occur should vacatur be granted. The court ordered supplemental briefing[5] to consider "constitutional grounds independent of the Court's 1991 judgment, some of which were raised in the original 1985 complaint, which might justify a continued injunction against the statutory provisions at issue." Dkt. 126; Add. 294.

On March 31, 2025, the District Court granted the District Attorneys' Rule 60(b)(5) Motion and indicated that on April 30, 2025, the permanent injunction would be vacated allowing NRS 442.255, 442.2555, and 442.257 to go into effect.

---

[5] In response to this Order, the District Attorneys unsuccessfully sought a Petition for Mandamus with this Court asserting that whether the District Court's inquiry into this factor before granting Rule 60(b)(5) relief "appears to be one of first impression in the Ninth Circuit." Add. 305.

4

Add. 27. Without addressing the remaining Rule 60(b) arguments, the Court limited its merits analysis to whether under Rule 60(b)(5)'s "inequity provision," *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) mandated vacatur of the 1991 permanent injunction. In granting relief,[6] it determined that *California by and through Becerra v. EPA*, 978 F.3d 708 (9th Cir. 2020) established the standards governing the merits of the "inequity provision" arguments related to *Dobbs*. Add. 17-21. Applying *Becerra*, it found that because *Dobbs* overruled *Glick*, continued enforcement of the 1991 permanent injunction would be inequitable. *Id.* at 24. In determining "whether the proposed modification is suitably tailored to the changed circumstances," the District Court found *Becerra* controlled the outcome and did not allow it, at this stage, to consider whether vacatur would result in a constitutional violation as consideration of independent legal basis would require evaluating "the equities." *Id*.

On April 11, 2025, PPMM appealed the Rule 60(b) decision. On April 14, 2025, PPMM filed a Motion to Stay the Rule 60(b) Order pending appeal before the District Court, or in the alternative, a temporary administrative stay to allow PPMM to seek a stay with this Court. Dckt. 137, 139. On April 25, 2025, the District Court denied PPMM's Motion to Stay, finding that PPMM did not demonstrate "serious

---

[6] The District Court also found the Motion's filing seventeen months after *Dobbs* to be reasonable, *id.* at 14, and that *Dobbs* arguments should be evaluated under Rule 60(b)(5)'s inequity prong. *See id.* at 16. PPMM does not concede these issues.

5

questions" as to the merits, that its irreparable harm arguments were "persuasive" while declining to make the legal finding, and granting a temporary administrative stay preserving the status quo to allow PPMM to seek relief pursuant to Fed. R. App. P. 8(a)(2). Add. 28, 39.

## II.    The Parental Notification and Judicial Bypass Requirements

The parental notification provision requires that "a custodial parent or guardian [of the patient] is personally notified before the abortion" and if unable to do so "after a reasonable effort," the physician must wait to provide the abortion until after they have "notified the parent or guardian by certified mail at the[ir] last known address." NRS 442.255(1). The statute does not define numerous terms that are central to its enforcement, such as: "personal notification," "last known address," "reasonable effort," or what it means to have "notified." Add. 46. If a provider is unable to provide "personal notification" to the custodial parent or legal guardian, unmarried or unemancipated young people's only access to abortion services in Nevada requires obtaining a court order through a multi-step judicial bypass process. *See* NRS 442.255; NRS 442.2555. But this process exists only on paper in the absence of binding statutory or administrative guidance or policies in place to ensure its proper and uniform implementation across Nevada's eleven judicial districts, guaranteeing accessibility to those seeking such an order. *See* NRS 442.255(4); NRS 442.2555(5) (exempting actions from Nevada's rules of civil and appellate

procedure). Likewise, these provisions do not define the essential terms underlying the statute's adjudicatory process. *See, e.g.*, NRS 442.255(2) (requiring that a person "request a District Court to issue an order"). Thus, the accessibility of this process remains uncertain. Add. 48.

If a patient has sought authorization from the court and no decision is issued within one judicial day after their "interview," authorization is "deemed to have been granted." *See* NRS 442.255(3); *see also Glick*, 616 F. Supp. at 325 (discussing "pocket approval" provision). But the text of the statute lacks any guidance regarding how a provider can demonstrate that the abortion was authorized pursuant to this "pocket approval." *Id.*; Add. 47. Physicians who violate the parental notification requirement are subject to criminal penalties including imprisonment of up to six months per violation, up to $1,000 monetary fine, or both. *See* NRS 442.257; NRS 193.150. Violations may result in civil disciplinary action, ranging from public reprimands, monetary fines, to licensure consequences. *See, e.g.*, NRS 630.301 et. seq.; Add. 46.

## LEGAL STANDARD

This Court may grant a stay pending appeal when the applicant has demonstrated: (1) a strong showing that they are "likely to succeed" on the merits; (2) they will be irreparably injured absent a stay; (3) the issuance of the stay will not substantially injure the other parties; and (4) the public interest supports granting a

stay. *See Duncan v. Bonta*, 83 F.4th 803, 805 (9th Cir. 2023) (en banc); Fed. R. App. 8(a)(2). The first two factors, which are the most critical, can be satisfied by demonstrating "that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (internal citations and quotations omitted). This Court reviews the district court's decision granting a Rule 60(b)(5) motion for relief from judgment for abuse of discretion and its underlying legal conclusions *de novo*. *See Flores v. Huppenthal*, 789 F.3d 994, 1000 (9th Cir. 2015); *Becerra*, 978 F.3d at 713 (internal citations and quotations omitted).

## ARGUMENT

This Court should stay the District Court's Order pending resolution of the appeal as to whether it was proper to grant Rule 60(b)(5) relief vacating the 1991 final judgment and allowing NRS 442.255 and NRS 442.2555 to go into effect for the first time since their passage in 1985.

### I. PPMM Has Raised At Minimum Serious Questions Going to the Merits

PPMM is likely to succeed, or at minimum, can demonstrate that "serious legal questions" or "substantial questions" exist as to the merits of this case. This factor may be satisfied if able to demonstrate that there is a "reasonable probability or fair prospect of success." *Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019) (internal citations and quotations omitted); *see also Leiva-Perez*

8

*v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011); *Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1029 (N.D. Cal. 2015) (collecting different formulations for this standard including "one that raises genuine matters of first impression within the Ninth Circuit").

The District Court erred in finding that *Becerra* "made clear" that courts can only consider "equitable factors", including whether the proposed modification will create or perpetuate a constitutional violation before granting relief, if the relief is sought from (1) a prospective injunction on the basis of factual changes, or (2) a consent decree. Particularly, it erred in finding that *Becerra*'s holding that "when a district court reviews an injunction based solely on law that has since been altered to permit what was previously forbidden, it is an abuse of discretion to refuse to modify the injunction in the light of the changed law" applies broadly to all legal changes beyond when the underlying challenged law itself has been modified via amendments or repeals. 978 F.3d at 718-19. Accordingly, the District Court erred in finding it could not inquire into whether the proposed vacatur would create or perpetuate a constitutional violation until *after* it had granted Rule 60(b)(5) relief in light of *Becerra*.

Relief under Rule 60(b)(5)'s inequity provision requires demonstrating "a significant change in either factual conditions or in law that renders continued enforcement detrimental to the public interest." *See Horne v. Flores*, 557 U.S. 433,

9

447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). The "authority to modify an injunction is more limited than its authority to formulate an injunction in the first instance because of the additional interest in the finality of judgments." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021). Accordingly, a party seeking modification must show a significant change in fact or law and that the proposed modification is "suitably tailored to resolve the problems created by the changed factual or legal condition." *Id.* Interpreting this step, the Supreme Court admonished that "[i]n evaluating a proposed modification, three matters should be clear. Of course, a modification must not create or perpetuate a constitutional violation." *Rufo*, 502 U.S. at 391. The District Court's constriction of *Rufo*'s language fails for multiple reasons.

First, *Becerra* cannot supplant the Supreme Court's admonition in *Rufo* as this principle has not been overruled or constrained by the Supreme Court or this Circuit, to allow the District Court to reinterpret its breadth. *Agostini v. Felton*, 521 U.S. 203, 237-38 (1997). Consequently, to avoid running afoul of this well-established principle, *Becerra*'s "law that has since been altered to permit what was previously forbidden" must be limited to the context within which it arose: a court cannot deny Rule 60(b)(5) relief on factual equities alone when the underlying law has been amended or repealed. The cases cited by this Court in *Becerra* bolster this narrow interpretation: *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (1855),

10

*Railway Employees v. Wright*, 364 U.S. 642 (1961), and *California Department of Social Services v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008), all rely upon legislative and regulatory amendments to the underlying law to allow what was previously forbidden. *Becerra*, 978 F.3d at 713-715. Nor does *Agostini*'s holding overrule *Rufo*'s admonition in conducting the "suitably tailored" analysis. There, the Supreme Court was not confronted with the issue here: whether independent constitutional violations raised, and previously pled, must be considered as a part of the decision to grant Rule 60(b)(5) relief. *Agostini*, 521 U.S. at 240. Because *Agostini* resolved the only constitutional questions raised before it, this decision cannot be stretched to mandate disregarding Rufo's "constitutional inquiry". *See Agostini*, 521 U.S. at 237.

Similarly, the District Court cannot ignore *Rufo*'s admonition on the basis of whether the underlying prospective injunctive relief stems from an injunction rather than a consent decree. The Ninth Circuit's clear enunciation that *Rufo* applies to all motions brought under Rule 60(b)(5)'s "inequity" provision, remains undisturbed post-*Becerra*. *See Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999). *Becerra*'s treatment of *Bellevue* limits *Becerra*'s holding to circumstances where a party is objecting to Rule 60(b)(5) relief solely on the basis of factual equities counseling against it. *See* 978 F.3d at 716 n.3.

Lastly, applying *Becerra* broadly to bar consideration of *Rufo*'s admonition until after Rule 60(b)(5) relief has been granted conflicts with the fundamental

underlying principles of the rule; it would require that a court disturb and vacate a final judgment, only to then conduct the very inquiry *Rufo* mandated after it has disturbed the final judgment. Beyond the indisputable and unnecessary disruption of the *status quo* that this would effectuate, such a rule would create a multitude of problems. As applied here, the District Court's determination that it could not consider whether NRS 442.255 and NRS 442.2555 violated the Fifth Amendment and Fourteenth Amendment, claims pled in the 1985 complaint, until *after* it granted vacatur opens the door to unnecessary vacatur of decades-old injunctions for the sole purpose of re-litigating the merits of a case, the very principle courts have cautioned against. Accordingly, PPMM satisfies this factor.

## II. Absent a Stay, PPMM, Its Providers, and Patients Will Suffer Irreparable Harm

Absent a stay pending appellate review of the Rule 60(b) Order, PPMM, its patients under the age of eighteen, and its staff will experience numerous forms of irreparable harm caused by the sudden and standardless enforcement of Nevada's parental notification and judicial bypass provisions, easily satisfying the requirements of the second *Nken* factor. *See Mi Familia Vota*, 111 F.4th at 981; *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020). The text of S.B. 510 sketches the requirements for effectuating parental notification or obtaining a judicial bypass order. But there is no evidence that a meaningful process exists by which a young person may seek such authorization or that implementing structures will exist to

allow a young person to obtain judicial authorization before this appeal resolves. *See* Add. 47-48. Nor is the text of the statute alone sufficient to identify a meaningful process absent implementing guidance from relevant local and Nevada state entities. *Id.*; Add. 186-89 (hearing transcript). Accordingly, young people who decide to terminate a pregnancy but cannot satisfy the parental notification or judicial authorization requirements will suffer a range of physical, emotional and financial consequences as a result of being forced to delay their care, or in some cases, carry a pregnancy to term and parent against their will. For PPMM's providers, and staff, enforcement of the parental notification and judicial bypass provisions will result in irreparable harm as a result of credible threats of criminal prosecution if deemed to be out of compliance, and related reputational harm. None of these harms can be undone after the resolution of this appeal

### A. Physical, Emotional and Financial Costs of Being Forced to Delay Care or Carry a Pregnancy to Term

Absent a stay, young people unable to (1) satisfy NRS 442.255(1), or (2) obtain the requisite judicial order will be required to delay care or carry a pregnancy to term against their will, with the physical, emotional, and financial effects that this entails. "There are few situations in which denying a minor the right to make an important decision will have consequences so grave, permanent, and indelible." *Planned Parenthood of Mont. v. Montana*, 554 P.3d 153, 169 (Mont. 2024). Courts recognize that delaying and denying access to necessary medical care and the

13

ensuing consequences constitutes irreparable harm. *See Harris v. Bd. of Supervisors, Los Angeles Cnty.,* 366 F.3d 754, 766 (9th Cir. 2004) (irreparable harm in numerous physiological harms, medical complications, and risk of death that may be caused by delay in treatment ); *Rodde v. Bonta,* 357 F.3d 988, 999 (9th Cir. 2004) (irreparable "harm includes delayed and/or complete lack of necessary treatment, and increased pain"); *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1324 n.5 (9th Cir. 1994) (recognizing that emotional distress, depression, and anxiety may constitute irreparable injury); *see also Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 511 (9th Cir. 1992), as amended (Feb. 12, 1993).

Absent a meaningfully available judicial bypass process, young people may be forced to involve custodial parents or legal guardians, at the expense of their personal safety concerns, to access care to which they are statutorily entitled, or forgo their right to seek an abortion altogether when forced to navigate an ad hoc and opaque bypass process. Add. 147-49 (Brief of Amici Curiae Youth Advocates and Researchers). Each of these constitutes irreparable harm. *See, e.g., Memphis Planned Parenthood, Inc. v. Sundquist,* 2 F. Supp. 2d 997, 1007 (M.D. Tenn. 1997), *rev'd on other grounds*, 175 F.3d 456 (6th Cir. 1999) ("Either harm constitutes irreparable injury, whether abuse, forced pregnancy, or delayed abortion occur as a result."); *Williams v. Zbaraz*, 442 U.S. 1309, 1314–15 (1979) (Stevens, J.) (determining that claim of irreparable injury was supported by increased risk of

14

morbidity and mortality due to seeking abortion at a later gestational age when an individual was forced to remain pregnant).

Forcing a person to carry a pregnancy to term can result in irreparable harm due to the range of physical, mental, and economic short and long-term impacts of these events. *See Planned Parenthood Ass'n of Utah v. Utah,* 554 P.3d 998, 1042 (Utah 2024) (affirming irreparable harm in light of the physical, emotional, and financial impact of carrying an unwanted pregnancy to term); Add. 43-45. Even with "uncomplicated" pregnancies, a patient may experience a wide range of physiological challenges and exacerbate pre-existing health conditions or result in the onset of new and debilitating health conditions unique to pregnancy that can have long term consequences. *See id.* at 44. The mental health risks associated with pregnancy can be higher for patients with unintended pregnancies. *See id.* at 63. Young people experience many pregnancy-related complications and risks at higher rates than adults. *See* Add. 67-68. Forced pregnancy, labor, childbirth, and parenting also have consequential social and economic impacts on a person's life. *See Planned Parenthood Ass'n of Utah*, 554 P.3d at 1042 (recognizing pregnancy's impact on an individual's ability to work and correlations suggesting short- and long-term economic impact of pregnancy); *see also* Add. 74, 95, 112-13 (studies describing financial and social "costs" of adolescent birth and parenthood).

### B. Threat of Criminal and Licensing Penalties and Reputational Harm to PPMM, Its Providers, and Staff

Enforcement of the parental notification and judicial bypass requirements will irreparably harm PPMM, its providers, and staff who face criminal and licensing penalties, and other reputational harms, if found to be in violation of NRS 442.255 and NRS 442.2555. *See* Add. 46, 48-49 (describing risk and harms of arbitrary enforcement). Lacking binding guidance proscribing enforcement, physicians, including PPMM staff, in Nevada, face a credible threat of criminal enforcement should the enjoined provisions be enforced throughout the pendency of this appeal. Providers are faced with an impossible choice: divining how to demonstrate compliance with opaque statutory requirements at the risk of criminal prosecution and civil penalties or delaying or denying time-sensitive health care to minor patients until methods for extinguishing this risk exist. Likewise, requiring providers to enforce these provisions while leaving them without information to share with patients as to how such requirements can be fulfilled, will erode trust that patients have in seeking health care services. *See* Add. 48.

Courts have recognized irreparable harm when medical providers are required to act in ways that contradict their ethical obligations and best judgments, or by withholding care. *See, e.g.*, *Mayor & City Council of Baltimore v. Azar,* 392 F. Supp. 3d 602, 618–619 (D. Md. 2019) (irreparable harm when requirements forced doctors to engage in unethical practice of medicine endangering patients' lives); *Richmond Med. Ctr. for Women v. Gilmore*, 11 F. Supp. 2d 795, 809 (E.D. Va. 1998)

(irreparable harm when providers were required to "alter their medical advice to, and their medical care of, their patients, contrary to the best professional medical judgments" and would "chill the plaintiffs' ability to provide safe medical care for their patients who choose, or who are required for medical reasons to obtain, [lawful] abortions") (collecting cases).

Here, the threats of investigation and prosecution are well beyond speculative, because the State of Nevada and the remaining Defendants have not disavowed enforcement, and the District Attorneys have confirmed throughout their briefing an interest in enforcing NRS 442.255 and NRS 442.2555. *See, e.g.*, Add. 277; *cf. Tingley v. Ferguson,* 47 F.4th 1055, 1068 (9th Cir. 2022) (recognizing credible threat of enforcement, in the injury-in-fact context, when the government does not disavow enforcement of a law and provides generalized statements of enforcement of restriction). The risk of enforcement action, including criminal and civil penalties, suffices to demonstrate irreparable harm. *See, e.g.*, *Cal. Trucking Ass'n v. Becerra,* 433 F. Supp. 3d 1154, 1169 (S.D. Cal. 2020)*, rev'd on other grounds sub nom. Cal. Trucking Ass'n v. Bonta,* 996 F.3d 644 (9th Cir. 2021); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 857 (N.D. Tex. 2022); *Olson v. California*, No. CV 19-10956-DMG (RAOX), 2020 WL 905572, at *14 (C.D. Cal. Feb. 10, 2020), *aff'd,* 104 F.4th 66 (9th Cir. 2024); *cf. Bryant v. Woodall,* 1 F.4th 280, 285–88 (4th Cir. 2021), as amended (June 23, 2021) (finding, for purposes of injury-in-fact analysis, credible

threat of prosecution in light of resurgence of nationwide abortion restrictions). The threats of criminal harm to providers, in effect, requires them to carry out a policy even when it contradicts their medical judgment or requires them to deny care.

## III. The Remaining Stay Factors Weigh in Favor of Granting a Stay

The District Attorneys will not be substantially injured by the issuance of a Stay of the Rule 60(b) decision nor is the grant of a stay adverse to the public interest. *See Doe # 1*, 957 F.3d at 1068. While these factors may merge when the government is a party, there can be competing public and governmental interests. *See, e.g.*, *Simon v. City & Cnty. of San Francisco,* No. 24-1025, – F.4th –, 2025 WL 1174852, at *21 (9th Cir. Apr. 23, 2025).

Any potential harm to defendants is substantially outweighed by harm experienced by PPMM, its providers, and young people seeking access to abortion substantially outweighs any potential harm. Indisputably, staying the Rule 60(b) Order pending this Court's review would further delay the District Attorneys' ability to enforce the enjoined statutes. Given that prosecutions have never been allowed, the District Attorneys will not experience any substantial injury or *irreparable* harm *should a stay* be granted caused by a few more months of non-enforcement throughout the pendency of this appeal. *See Sweet v. Cardona*, 657 F. Supp. 3d 1260, 1272 (N.D. Cal. 2023) (citing *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (rejecting ongoing harm that was already ongoing). Nor is there evidence of

18

an *imminent* need to enforce these provisions, given the post-*Dobbs* 17-month in seeking Rule 60(b) relief. Add. 13, 201-03; *c.f. Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (delaying enforcing a right "tends to indicate at least a reduced need for such drastic, speedy action").

The District Court's finding that the Rule 60(b) Order vacating the *Glick* injunction disrupts the status quo as it would allow for the first time for the enactment of a "parental notification" and "judicial bypass" requirement tips the public interest strongly in favor of granting a stay. Add. 36-38; *see Doe #1*, 957 F.3d at 1068 (public interest existed in preserving status quo when for decades individuals had not been subjected to a new requirement). Additionally, the public interest is served by the preserving access to care for young people, which would be restricted by the implementation of the ambiguous parental notification and judicial bypass provisions pending throughout the pendency of the appeal. *See Golden Gate*, 512 F.3d at 1125–26 (noting that "the general public has an interest in the health of [its] residents" because "[l]ack of timely access to health care poses serious health risks"); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009); *Planned Parenthood Ass'n of Utah*, 554 P.3d at 1045 (affirming that the "public interest" favored restraining enforcement of an abortion law when "it would maintain the status quo of women's health treatment as it has been legally permitted for nearly fifty years"); *Leddy v. Becerra*, 617 F. Supp. 3d 116, 125 (E.D.N.Y. 2022) (public

interest in preserving availability of medical care when there was no "hint of substandard health care being provided").

Any prior public interest that existed in enforcing this statute has been supplanted by subsequent legislation protecting access to abortion. *See, e.g.*, NRS 442.250 (statutorily codifying, with protections, the right to abortion "within 24 weeks after the commencement of pregnancy"). Equally important is the public interest in ensuring that the judicial bypass process is accessible to safeguard the Nevada legislature's intention for a pathway to allow for abortion access without forced parental involvement. There is a public interest in ensuring that the Rule 60(b) appeal is resolved before dissolving the 1991 final judgment and resuming the underlying proceedings. *See Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1223 (D. Utah 2004) (citing *Sperry Corp. v. City of Minneapolis*, 680 F.2d 1234, 1238 (8th Cir. 1982)) (public interest in the "prompt and efficient settlement" of disputes with a governmental entity to avoid "further litigation, at taxpayers' expense"). The balance of harms tips heavily in favor of granting PPMM's motion to stay the Rule 60(b) ruling.

## CONCLUSION

For the reasons above, PPMM requests a stay of the Rule 60(b) Decision pending appeal.

Dated:        May 2, 2025

### BRAVO SCHRAGER LLP

By  */s/ Bradley S. Schrager*

BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
Email: bradley@bravoschrager.com
Email: daniel@bravoschrager.com

VALENTINA De FEX, ESQ. *(admitted pro hac vice)*
PLANNED PARENTHOOD FEDERATION OF
AMERICA
123 William Street, Floor 9
New York, NY 10038
Email: valentina.defex@ppfa.org

*Attorneys for Plaintiff-Appellant,*
*Planned Parenthood Mar Monte, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Motion complies with the type-volume limitation of Fed. R. App. P. 27 because it contains 5,200 words. This Motion complies with the typeface and the type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

By     */s/ Dannielle Fresquez*

      Dannielle Fresquez, an Employee of
      BRAVO SCHRAGER LLP

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of May, 2025, a true and correct copy of this **APPELLANT'S MOTION FOR STAY PENDING APPEAL** was served on all parties or persons requiring notice via the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate ACMS system.


By    * /s/ Dannielle Fresquez*
         Dannielle Fresquez, an Employee of
         BRAVO SCHRAGER LLP